UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- X
                                :

JUAN RAMIREZ AND                :
LUIS RAMIREZ,                   :
                                :

             Petitioners,     :

                                :

     - against -             :

                                :

UNITED STATES OF AMERICA,    :

                                :

           Respondent.     :
-------------------------------------------------- X

**OPINION AND ORDER**

05 Civ. 4179 (SAS)
07 Civ. 459 (SAS)

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.  INTRODUCTION

        Juan and Luis Ramirez ("Petitioners") bring these habeas corpus motions, pursuant to section 2255 of Title 28 of the United States Code ("section 2255"), to vacate, set aside, or correct their sentences.  After a seven week jury trial, Petitioners were convicted of crimes relating to racketeering, narcotics trafficking, robbery, assault, kidnaping, murder, interstate transportation of stolen property, and the use and possession of firearms.[1]  In January 2002, Luis Ramirez was sentenced to life imprisonment plus five years.  The following April, Juan

---

        [1]     Their convictions included violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), the Violent Crimes in Aid of Racketeering Statute ("VICAR"), and the Hobbs Act.

Ramirez – convicted of numerous additional crimes[2] – was sentenced to life imprisonment plus forty-five years.

In 2003, Petitioners and a third defendant, Shirley Calcano, appealed their respective convictions and sentences.  The Second Circuit rejected the appeals and affirmed their convictions and sentences in *United States v. Martinez*.[3]  But the following year, the Circuit recalled its *Martinez* decision to allow briefing on *Crawford v. Washington*,[4] a 2004 Supreme Court case that called into question *Martinez*'s ultimate disposition.  Subsequently, in a 2005 Summary Order, the Circuit again affirmed the convictions and sentences.[5]  In April 2005, Juan Ramirez timely filed a section 2255 motion *pro se*.  Luis Ramirez petitioned for certiorari in November 2005, which the Supreme Court denied the following January.  Luis Ramirez timely filed his *pro se* section 2255 motion in January 2007.  In March 2010, Petitioners jointly filed section 2255 motions through

---

[2]      These included assault, interstate travel in aid of racketeering, conspiracy to rob and robbery, kidnaping, interstate transportation of stolen goods, use of a firearm, and unlawful possession of a firearm.

[3]      83 Fed. App'x 384 (2d Cir. 2003), *vacated in part by Calcano v. United States*, 543 U.S. 801 (2004).

[4]      541 U.S. 36 (2004).

[5]      *See* 8/15/05 Summary Order ("8/15 Order"), Ex. D to Declaration of Assistant U.S. Attorney Michael D. Lockard.  Juan Ramirez was not party to that appeal, a fact discussed in further detail below.

counsel.[6]

Petitioners' expansive motions raised a number of issues.  In the interest of judicial economy, Judge Ellis treated the *pro se* motions together with counsel's motions because of their common legal issues.  In their *pro se* motions, Petitioners alleged that: (1) the charges against them in Counts 2, 13 and 15 of the Indictment are duplicative and in violation of the double jeopardy clause;[7] (2) once those are dismissed, all other Counts must be dismissed due to prejudicial spillover from the vacated convictions; (3) the life sentences for Count 15 violated their Fifth Amendment right to due process; (4) the jurisdictional showing for Count 12, charging a violation of the Hobbs Act, was insufficient; and (5) the alleged commerce nexus for charges under the Hobbs Act was a legal fiction.

The section 2255 motions prepared by Petitioners' counsel allege that Petitioners were both denied effective assistance of counsel at trial because their trial counsel: (1) failed to object to an allegedly defective jury charge for an

---

[6]      These actions were originally before Judge Robert Carter.  They were reassigned to this Court in November 2009 upon his retirement.  The following January, I referred the case to Ronald Ellis, the designated Magistrate Judge.  Petitioners filed their joint motions in 2010 pursuant to an Order from Judge Ellis.

[7]      Count 2 charged Petitioners with conspiracy to violate RICO; Count 13, conspiracy to commit robbery of narcotics or the proceeds of narcotics sales in violation of the Hobbs Act; Count 15, conspiracy to violate the narcotics laws of the United States by distributing and possessing with intent to distribute five kilograms or more of mixtures and substances containing detectable amounts of cocaine.  *See* Report and Recommendation ("R & R") at 18.

3

essential VICAR element; (2) failed to object to improper venue; (3) failed to object to a defective indictment; and (4) failed to challenge proof of the racketeering enterprise.

In addition to the joint motions, both Petitioners filed *pro se* motions. Juan Ramirez contended that his appellate counsel was ineffective for failing to file a *Crawford* brief after *Martinez* was reconsidered, and that the venue allegation for Count 8 was insufficient.[8]  Luis Ramirez alleged government misconduct in the prosecution of his case.

In his thorough and thoughtful R & R, Judge Ellis addressed all of Petitioners' allegations and concluded that their section 2255 motions should be denied.  Through counsel, Petitioners filed joint objections to the R & R, specifically disputing Judge Ellis's conclusions that:  (1) the jury charge on the fourth VICAR element of Counts 4, 5, and 8 was not flawed; (2) venue in the Southern District of New York was proper for Count 12; (3) the Superseding Indictment was not defective and Petitioners' constructive amendment claim is meritless; (4) trial counsel's defense strategy was constitutionally adequate; and (5) Juan Ramirez's ineffective assistance of appellate counsel claim is meritless.[9]

---

[8]     Count 8 charged him with assault in aid of racketeering.

[9]     *See generally* Joint Objections of Petitioners to Report and Recommendations of Magistrate Judge ("Joint Objections").

4

Additionally, Luis Ramirez filed *pro se* objections to the R & R, focusing on the validity of the indictment against him.[10]

For the following reasons, I adopt Judge Ellis's recommendations for all of Petitioners' claims save one.  Juan Ramirez, who was denied counsel at a critical stage of his appeal, shall have his appeal reinstated so that the Second Circuit can reach the merits of his *Crawford* objection.  All other claims for both Petitioners are denied.

## II.    LEGAL STANDARDS

### A.    Review of Magistrate's Report and Recommendations

District courts must "make a *de novo* determination . . . of any portion of the magistrate judge's [R & R] to which specific written objection has been made."[11]  However, "where objections are 'merely perfunctory responses,' argued in an attempt to 'engage the district court in a rehashing of the same arguments set forth in the original petition,' reviewing courts should review [an R & R] for clear error."[12]  Likewise,  "a district court evaluating a magistrate judge's

---

[10]    *See generally* Petitioner's Objections to the Magistrate Judge's Report and Recommendation.

[11]    Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1)(c) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.").

[12]    *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) (quoting *Vega v. Artuz*, No. 97 Civ. 3775, 2002 WL 31174466, at *1 (S.D.N.Y.

recommendation is permitted to adopt those portions of the recommendation to which no 'specific, written objection' is made, as long as those sections are not clearly erroneous."[13]

**B.    Section 2255**

"Collateral attack on a final judgment in a criminal case is generally available under [section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"[14] Accordingly, a court should only grant a section 2255 motion if: "(1) [the] sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; or (3) the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[15]

---

Sept. 30, 2002)).

[13]    *Greene v. WCI Holdings Corp.*, 956 F. Supp. 509, 513 (S.D.N.Y. 1997), *aff'd*, 136 F.3d 313 (2d Cir. 1998).

[14]    *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).  *Accord Johnson v. United States*, 313 F.3d 815, 817 (2d Cir. 2002) (ineffective assistance of counsel claims arise under the Sixth Amendment and as such are generally available as a claim of constitutional error).

[15]    *Woodard v. United States*, No. 04 Civ. 9695, 2005 WL 2978678, at *2 (S.D.N.Y. Nov. 7, 2005).

## III.   DISCUSSION

### A.   Unchallenged Recommendations

Petitioners did not object to a number of Judge Ellis's recommendations.  These include: (1) that Counts 2, 13, and 15 did not violate the double jeopardy clause; (2) that the life sentences for Count 15 did not violate Petitioners' Fifth Amendment Due Process rights; (3) that the Government's jurisdictional showing for Count 12 was adequate; (4) that the commerce nexus for the Hobbs Act was not an impermissible legal fiction; and (5) that venue for Count 8 was proper against Juan Ramirez.  After reviewing Petitioners' objections, I accept and adopt the findings and conclusions of Judge Ellis on these claims, which I have determined to be legally sound.[16]

### B.   Objections that Require Review for Clear Error

The first and third of Petitioners' five joint objections to the R & R "[did] not cite specific portions of the R & R to which [they] object[]," nor "explain why [Judge Ellis's] legal analysis is faulty or incorrect with regard to any particular issue."[17]  Instead, Petitioners used the objections as a platform to re-

---

[16]     Petitioners also moved to dismiss all of their other convictions because of prejudicial spillover from these allegedly invalid convictions.  Because the convictions are in fact valid, there can be no prejudicial spillover from them.  I therefore am likewise denying the spillover claim.

[17]     *Jackson v. Morgenthau*, No. 07 Civ. 2757, 2009 WL 1514373, at *1 (S.D.N.Y. May 28, 2009).

litigate their original arguments that the jury charges on Counts 4, 5, and 8 were flawed and that the Superseding Indictment was defective.  Accordingly, I have reviewed those portions of the R & R and the record for clear error, and have found none.  As such, I am adopting Judge Ellis's recommendation that these claims be denied.

### C.   Objections that Require *De Novo* Review

Petitioners raised three objections to the R & R with enough specificity to require *de novo* review.  They argue that Judge Ellis: (1) did not engage in a proper reconstruction of circumstances in his determination of the reasonableness of trial counsel's strategy, (2) misapplied the law governing venue for Count 12, and (3) used an incorrect legal standard in determining the merits of Juan Ramirez's claim for ineffective assistance of appellate counsel.[18]

### 1.   Trial Counsel's Strategy

Petitioners' various convictions all stem from their affiliation with a sprawling criminal institution called the "165th Street Organization" ("the Organization").[19]  The Organization engaged in expansive and often violent

---

[18]   *See* Joint Objections at 8-10, 15-16, 18-21.

[19]   Between 1992 and 1998, Juan Ramirez was the leader of, and Luis Ramirez was a member of, the Organization.  *See* R & R at 3.

criminal activity, including narcotics trafficking.[20]  Though headquartered in the

Bronx, New York, the Organization operated in areas of New Jersey and

Pennsylvania as well.[21]

   At trial, the Government provided evidence of Petitioners' guilt

through the testimony of numerous witnesses — law enforcement, civilians, and

cooperating members of the Organization.[22]  Over a dozen members of the

Organization pled guilty to involvement in the racketeering enterprise and five

testified at trial against Petitioners.[23]

   Petitioners' trial counsel pursued a strategy of discrediting the

Government's witnesses.  Petitioners argue that their counsel essentially

abandoned an alternative strong defense by not cross-examining the witnesses

about the existence of a racketeering enterprise.  Petitioners allege that the

witnesses would have been unable to prove its existence by the legal definition of a

criminal enterprise because, in fact, no such enterprise existed.[24]  Petitioners also

---

[20]   *See id.*

[21]   *See id.*

[22]   *See id.*

[23]   The Government also showed that Juan Ramirez stored cocaine, guns, car theft tools, and police gear in his home to supply the Organization's members in their illegal activities.  *See id.* at 15.

[24]   *See* 18 U.S.C. § 1961(4) ("'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group

wanted to call exculpatory witnesses who would have testified that no enterprise existed, but their counsel decided against that approach.  For those reasons, Petitioners argue that they suffered prejudice at trial as a result of their ineffective counsel.

"[T]he right to be represented by counsel is among the most fundamental of rights,"[25] and it can be abridged by ineffective counsel.  In *Strickland v. Washington*, the Supreme Court explained that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[26]  *Strickland* thus provides a two-pronged test to establish ineffectiveness: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense.[27]

"In any case presenting an ineffectiveness claim, the performance inquiry [for the first *Strickland* prong] must be whether counsel's assistance was reasonable considering all the circumstances."[28]  That evaluation should be highly

_____

of individuals associated in fact although not a legal entity").

[25]    *Penson v. Ohio*, 488 U.S. 75, 84 (1988).

[26]    466 U.S. 668, 686 (1984).

[27]    *See id.* at 687.

[28]    *Id.* at 687-88.  The Court further required "that counsel's representation [falls] below an objective standard of reasonableness."

deferential to counsel.  Courts are wary of encroaching into counsel's territory in order to avoid "distract[ing] counsel from the overriding mission of vigorous advocacy of the defendant's cause."[29]  Further,

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."[30]

In their objections, Petitioners argue that Judge Ellis did not engage in any reconstruction of the trial's circumstances, and that his evaluation of the reasonableness of counsel's trial strategy was speculative, untethered to any factual record and, therefore, arbitrary.[31]

In *United States v. Nersesian*, the Second Circuit held that a reasonable trial strategy cannot form the basis of an ineffectiveness claim.[32] Further, "[d]ecisions whether to engage in cross-examination, and if so to what extent and what manner, are . . . strategic in nature," and the same is true for

---

[29]    *Id.* at 689.

[30]    *Id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[31]    *See* Joint Objections at 15.

[32]    *See* 824 F.2d 1294, 1321 (2d Cir. 1987).

decisions on which witnesses, if any, to call at trial.[33]   The Court is thus presented with two questions: *one*, whether counsel's decision to forego calling certain exculpatory witnesses was reasonable strategy; and *two*, whether counsel's decision to forgo cross-examining the prosecution's witnesses about the existence of a criminal enterprise was reasonable strategy.

I find that both decisions were reasonable.  In every criminal case, counsel's actions are accorded a "strong presumption" of reasonableness,[34] and Petitioners have failed to overcome that presumption.  *First*, when considering the circumstances of counsel's conduct and evaluating the decision from counsel's perspective, I agree with Judge Ellis that the decision to forego calling Petitioners' exculpatory witnesses was objectively reasonable.  Those witnesses had a serious credibility problem:  they all pled guilty to involvement with the very criminal enterprise whose existence they would be called on to deny.[35]  Given this conflict, counsel's decision to abandon them as potential exculpatory witnesses was objectively reasonable when made.[36]

---

[33]     *Id.*

[34]     *Strickland*, 466 U.S. at 688.

[35]     *See* R & R at 16 n.11.

[36]     *See United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) ("The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess.").

12

*Second*, when considering the circumstances of counsel's conduct and evaluating the decision from counsel's perspective, I agree with Judge Ellis that the decision to forego cross-examination of Government witnesses on the existence of the criminal enterprise was objectively reasonable.  Counsel was facing "overwhelming evidence of the racketeering enterprise adduced at trial,"[37] including evidence that:  the Organization controlled crack cocaine, cocaine, and heroin distribution in the Bronx; distributed crack cocaine in Pennsylvania; stole cars in New York and New Jersey and sold their stripped parts; and planned and executed numerous coordinated assaults and robberies.[38]  Given the sheer volume of evidence of the enterprise's existence, counsel's decision to forego a challenge to the existence of an enterprise was objectively reasonable.  That this strategy ultimately failed is not persuasive.  As noted earlier, this Court must strive to "eliminate the distorting effects of hindsight."[39]  Further, as for the strategy Petitioners' counsel did pursue, "[i]t is good practice for defense counsel to inquire into a witness's bias or motive to testify on cross-examination."[40]  In short, the circumstances justified counsel's decision to forego cross-examination of the

---

[37]   R & R at 15.

[38]   *See id.* n.10.

[39]   *Strickland*, 466 U.S. at 688.

[40]   *Luciano*, 158 F.3d at 660.

13

Government's witnesses on the existence of the criminal enterprise.

Given that both decisions were objectively reasonable, I find no deficiency in trial counsel's performance to justify a claim of ineffective assistance.  Accordingly, I agree with Judge Ellis and adopt his recommendation that these claims be denied.

### 2.    Venue for Count 12

A number of charges against Petitioners stem from the robbery, kidnaping, and murder of drug courier Francisco Soto.[41]  Acting in concert with other gang members, Petitioners abducted Soto in New Jersey.[42]  They bound and gagged Soto, took his cocaine, and transported him and the drugs to New York.[43]  Once back in the Bronx, they killed Soto and divided his cocaine amongst themselves for local distribution.[44]

Count 12 charged Petitioners with violating the Hobbs Act, which criminalizes, *inter alia*, any act that "obstructs, delays, or affects commerce or the movement of any article or commodity in commerce [] by robbery."[45]   Petitioners

---

[41]    *See* 98 CR. 438, Doc. 129 ("Superseding Indictment"), at 5-6, 15-17.

[42]    *See* R & R at 10.

[43]    *See id.*

[44]    *See id.* at 10-11.

[45]    18 U.S.C. § 1951.

14

argue that the robbery took place entirely in New Jersey, and therefore venue in the

Southern District is improper.

   In the Second Circuit, venue is proper where the crime had, *one*,

"substantial contacts" with the district, and *two*, involved "some activity in the

situs district."[46]  Establishing substantial contacts requires consideration of "a

number of factors — the site of the defendant's acts, the elements and nature of the

crime, the locus of the effect of the criminal conduct, and the suitability of each

district for accurate factfinding."[47]

   The Hobbs Act does not merely criminalize robbery; it criminalizes

obstructing or delaying interstate commerce by robbery.  Accordingly, under the

Hobbs Act, the venue requirement that "some activity [take place] in the situs

district"[48] is satisfied "in any district where interstate commerce is affected *or*

where the alleged acts took place."[49]

   The facts plainly support venue in the Southern District of New York,

as the robbery affected interstate commerce here and had substantial contacts with

---

[46] *United States v. Royer*, 549 F.3d 886, 895 (2d Cir. 2008).

[47] *United States v. Reed*, 773 F.2d 477, 481 (2d Cir. 1985).

[48] *Royer*, 549 F.3d at 895.

[49] *United States v. Stephenson*, 895 F.2d 867, 875 (2d Cir. 1990) (emphasis added).

this district.  *First*, I agree with Judge Ellis that the robbery affected interstate commerce in this district because Petitioners divided and sold the stolen cocaine in the Bronx after transporting it over state lines.[50]  Those interstate commerce effects satisfy the venue requirement of "some activity in the situs district,"[51] even though the robbery itself did not take place in this district.

Second, the "substantial contact" factors set forth in *United States v. Reed* also favor venue here.[52]  Though the initial robbery took place in New Jersey, the use of force extended into the Bronx.  The elements and nature of the crime support venue in the Southern District of New York because the effect on commerce derived primarily from moving cocaine into this district for sale here. The locus of the effects of the criminal conduct was in this district, where Soto was murdered and his cocaine sold.  Those same facts also establish that this district was suitable for accurate factfinding, a suitability further buttressed by the fact that Petitioners lived in this district and the Organization operated here.

For the preceding reasons, I agree with Judge Ellis that venue for Count 12 was proper, and Petitioners' trial counsel were not ineffective for failing to raise an objection to it.  Accordingly, I adopt the recommendation in the R & R

---

[50]     *See* R & R at 10.

[51]     *Royer*, 549 F.3d at 895.

[52]     *See* 773 F.2d at 481.

16

that this claim be denied.

### 3.    Ineffective Appellate Counsel

After trial, Petitioners and a third defendant, Shirley Calcano,
appealed their convictions, which the Second Circuit affirmed in *United States v.
Martinez*.  However, Petitioners got another bite at the apple in July 2004, when
the Second Circuit recalled its *Martinez* decision in recognition of an "exceptional
circumstance[]":[53] the Supreme Court's *Crawford* decision, which created a
"supervening change in governing law that call[ed] into serious question the
correctness of the court's judgment."[54]  *Crawford* established that all out-of-court
testimonial evidence, including plea allocutions, is inadmissable at trial unless the
defendant had a prior opportunity to cross-examine the witness and the witness
was unavailable for trial.[55]  Here, the Government used three plea allocutions as
evidence at trial to prove the existence of a criminal conspiracy involving

---

[53]    *Fine v. Bellefonte Underwriters Ins. Co.*, 758 F.2d 50, 53 (2d Cir.
1985).

[54]    7/20/04 Order, Ex. 1 to Affirmation of Jesse Siegel, Counsel to Juan
Ramirez ("Siegel Aff."), at 12 (citing *Mancuso v. Herbert*, 166 F. 3d 97, 100 (2d
Cir. 1999)).

[55]    *See* 541 U.S. at 53-54 ("The historical record also supports a second
proposition: that the Framers would not have allowed admission of testimonial
statements of a witness who did not appear at trial unless he was unavailable to
testify, and the defendant had had a prior opportunity for cross-examination. The
text of the Sixth Amendment does not suggest any open-ended exceptions from the
confrontation requirement.").

Petitioners, precisely the type of practice *Crawford* forbid.

Luis Ramirez and Shirley Calcano filed *Crawford* briefs with the Circuit panel, but Juan Ramirez did not.  Three months prior to the Circuit recalling its Mandate in July 2004, Juan Ramirez's appellate counsel, Charles Lavine, ceased representing him.[56]  However, Lavine did not move to be relieved as counsel until July 2005, and was not relieved until August 1, 2005.[57]  As such, anything Juan Ramirez submitted *pro se* throughout that fifteen month period was rerouted to Lavine, Juan's attorney of record.[58]  On November 16, 2004, after Lavine had ceased acting as Juan's counsel but long before he was relieved, the Circuit filed an order stating, "[i]n light of the fact that . . . Juan Ramirez has made no submission to this Court whatever with respect to any issue asserted to arise under *Crawford*, this Court concludes that he makes no such assertion or that he has abandoned it."[59]  Juan Ramirez claims that he had urged Lavine to file a

---

[56]     *See* 11/12/04 Letter from Lavine to Juan Ramirez, Ex. 2 to Siegel Aff. ("As I had advised you in my letter of April 30, 2004, my services ended when the Supreme Court denied our petition for certiorari.").

[57]     *See* 7/26/05 Order, Ex. 1 to Siegel Aff., at 18 (granting motion to be relieved as of August 1, 2005).

[58]     *See, e.g.*, 1/4/05 Letter from Ralph Obas, Deputy Clerk to the Second Circuit, to Lavine, Ex. 3 to Siegel Aff. (forwarding Juan Ramirez's *pro se* submission to Lavine "because [Juan Ramirez] is represented by you as counsel in this appeal").

[59]     11/16/04 Order, Ex. 1 to Siegel Affirmation, at 16.

18

*Crawford* brief multiple times before the Circuit concluded that he had abandoned it.[60]

Juan argues that the above facts establish that he was deprived of his Sixth Amendment right to counsel.[61]  He contends that he was constructively denied counsel and, therefore, the Court should assume that this denial prejudiced his defense.[62]  Judge Ellis disagreed, distinguishing the facts here from those of the paradigmatic cases of constructive denial of counsel because "Ramirez received the assistance of Lavine throughout appeal, on numerous issues."[63]  Instead, Judge Ellis reasoned that Juan Ramirez was in actuality bringing a claim governed by *Strickland*, where he "must [] demonstrate [both] deficient performance [by his counsel] and ensuing prejudice."[64]  Judge Ellis indicated that Juan Ramirez cannot demonstrate prejudice, because neither Luis Ramirez nor Shirley Calcano were

---

[60]     *See* Joint Objections at 19-20.

[61]     *See id.* at 21.

[62]     *See id.*

[63]     R & R at 25. Judge Ellis contrasted the assistance Lavine gave Ramirez with the nearly total lack of assistance in *Jenkins v. Coombe*, 821 F.2d 58, 161 (2d Cir. 1987) (counsel filed cursory five-page brief on appeal); *Tippins v. Walker*, 77 F.3d 682, 686 (2d Cir. 1996) (counsel slept through trial); and *Castellanos v. United States*, 26 F.3d 717, 720 (7th Cir. 1994) (counsel failed to honor defendant's instruction to file a notice of appeal).

[64]     R & R at 25 (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)).

able to prevail on the *Crawford* issue.[65]  After a thorough recapitulation of the record, Judge Ellis explained that the logic the Second Circuit used to reject Luis Ramirez's and Shirley Calcano's *Crawford* defenses would apply with equal force to Juan Ramirez's defense.[66]

I disagree with Judge Ellis's conclusion that *Strickland* governs this matter.  The same day that the Supreme Court issued *Strickland*, it also issued *United States v. Cronic*,[67] and the two cases should be read together as creating one framework for evaluating the adequacy and effectiveness of counsel.[68]  *Strickland* "announced a two-part test for evaluating claims that a defendant's counsel performed so incompetently . . . that the defendant's sentence or conviction should be reversed."[69]  The presumption underpinning *Strickland* is that counsel's *performance* was inadequate.  As the Seventh Circuit explained,

---

[65]     *See* R & R at 26-26.  The Second Circuit recognized the use of plea allocutions as a *Crawford* error, but still upheld the convictions because the error did not affect the appellants' substantial rights under a plain error standard of review.  The Circuit reviewed for plain error because neither Luis Ramirez nor Shirley Calcano preserved the claims at trial.  *See* 8/15 Order.

[66]     *See* R & R at 26-28.

[67]     466 U.S. 648 (1984).

[68]     *See Bell v. Cone*, 535 U.S. 685, 695-96 (2002) (describing *Cronic* as creating three exceptions to *Strickland* and affirming the continued relevance of both cases in evaluating assistance of counsel).

[69]     *Id.* at 695.

> [t]he crucial premise on which the *Strickland* formula rests - that
> counsel was in fact assisting the accused during the proceedings
> and should be strongly presumed to have made tactical judgments
> "within the wide range of professional assistance" - is totally
> inapplicable when counsel was absent from the proceedings and
> unavailable to make any tactical judgments whatsoever.[70]

Cases involving the absence of counsel are instead governed by *Cronic*, which
"identified three situations implicating the right to counsel that involved
circumstances 'so likely to prejudice the accused that the cost of litigating their
effect in a particular case is unjustified.'"[71]  Those situations are: (1) the complete
denial of counsel; (2) a total failure by counsel to subject the prosecution's case to
meaningful adversarial testing; and (3) instances when counsel is called upon to
render assistance under circumstances where competent counsel very likely could
not do so.[72]

---

[70]     *Siverson v. O'Leary*, 764 F.2d 1208, 1216 (7th Cir. 1985) (quoting
*Strickland*, 466 U.S. at 690) (citation omitted).

[71]     *Bell*, 535 U.S. at 695 (quoting *Cronic*, 466 U.S. at 658-59).  *Accord
Van v. Jones*, 475 F.3d 292, 304 (6th Cir. 2007) ("*Strickland* set forth the Court's
two-part inquiry into ineffective assistance of counsel, requiring that a petitioner
show both ineffectiveness and prejudice. *Cronic* specified circumstances of alleged
ineffective assistance of counsel understood by the Court to require no showing of
prejudice. Chief among these was the absence of counsel at a critical stage.
*Strickland*'s prejudice analysis covered all other circumstances.").

[72]     *See Cronic*, 466 U.S. at 659-62.  For an example of the third
exception, see *Powell v. Alabama*, 287 U.S. 45 (1932).  *Powell* concerned the
highly public, racially-charged trials of a number of African-American boys
accused of raping two white girls on a train as it transited Alabama.  None of the
defendants were from Alabama, and instead of giving them opportunity to get in

21

The difference between the first and second *Cronic* exceptions is important. As the Supreme Court held in *Bell v. Cone*, in order to fall into the second exception, "the attorney's failure must be complete . . . . Here, [in contrast] respondent's argument is not that his counsel failed to oppose the prosecution throughout the[] proceeding as a whole, but that his counsel failed to do so at specific points."[73] That reasoning neatly tracks the logic Judge Ellis employed in deciding that *Strickland* governs here.[74]

However, it is the first, not the second, *Cronic* exception that is at issue in this case. The exception for a complete denial of counsel does not require counsel's absence throughout the entire trial. Rather, "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the

---

touch with their family to arrange for counsel, the trial court appointed "all the members of the bar for the purpose of arraigning the defendants and then of course [the Court] anticipated [the local bar would] continue to help [defendants] if no counsel appear[ed]." *Powell*, at 53. The trial court then allowed a Tennessee lawyer who had very little knowledge of the facts of the case or local rules and procedure to take over as counsel, with the aid of the local bar. The *Powell* Court held that "such designation of counsel as was attempted was either so indefinite or so close upon the trial as to amount to a denial of effective and substantial aid in that regard." *Id.*

[73]     *Bell*, 535 U.S. at 697.

[74]     *See* R & R at 25.

accused is denied counsel at a critical stage of his trial."[75]  In such cases, a court must presume prejudice.  Further, "[b]ecause the fundamental importance of the assistance of counsel does not cease as the prosecutorial process moves from the trial to the appellate stage, the presumption of prejudice must extend as well to the denial of counsel on appeal."[76]

To determine if a particular stage of a proceeding is critical, courts must "analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice."[77]  "Perhaps the best way of reaching an answer to that query is to ask whether [the defendant] had any [subsequent] opportunity . . . to recover or exercise whatever privilege he lost."[78]

Potential substantial prejudice to Juan Ramirez inhered in the

---

[75]     *Cronic*, 466 U.S. at 659.  *Accord Coleman v. Alabama*, 399 U.S. 1, 7 (1970) ("This Court has held that a person accused of crime 'requires the guiding hand of counsel at every step in the proceedings against him.'") (quoting *Powell*, 287 U.S. at 69).

[76]     *Penson*, 488 U.S. at 88 (citation omitted).

[77]     *Coleman*, 399 U.S. at 7.

[78]     *Van*, 475 F.3d at 313.  The Sixth Circuit recognized in *Van* the curious fact that determining whether a stage is critical requires a "derivative prejudice analysis [very similar] to the proscribed one."  The key difference is analyzing *potential* prejudice, which goes to the qualities of the proceeding itself, rather than *actual* prejudice, which is fact-specific.

23

proceedings that followed the Second Circuit's recall of its Mandate.  "[A] panel will ordinarily recall its mandate only in exceptional circumstances."[79]  In this case, the exceptional circumstance recognized by the panel was the "serious question [about] the correctness of the court's judgment."[80]  The privilege at risk was the chance to brief the Circuit on an issue the Circuit itself recognized as potentially dispositive.  As the facts of this case demonstrate, a lack of assistance not only could have, but did in fact result in the irrevocable loss of that privilege.

Actual assistance by counsel would have avoided that forfeiture.  A responsive counselor would have filed a *Crawford* brief prior to the deadline, preventing Juan Ramirez from defaulting on the issue.  Further, the appellate process itself "require[s] careful advocacy to ensure that rights are not forgone and that substantial legal and factual arguments are not inadvertently passed over."[81]  Here, the Government concedes that legal arguments were forfeited,[82] and the substance of those arguments cannot be in doubt given the Circuit's own reasoning

---

[79]   *Fine*, 758 F.2d at 53.

[80]   7/20/04 Order.

[81]   *Penson*, 488 U.S. at 85.

[82]   *See* Government's Response to Petitioners' Objections to the R & R at 22-23, arguing that the forfeiture was harmless because filing a *Crawford* brief "would have been a futile exercise."

for recalling its Mandate.[83]  "[T]he core purpose of the [Sixth Amendment] counsel guarantee was to assure 'Assistance' . . . when the accused was confronted with both the intricacies of the law and the advocacy of the prosecutor."[84]  Juan Ramirez received no such assistance, and was even prevented from representing himself, at a moment when the need for a skilled advocate was at its highest:  when he faced the intricacies of a change in the law that could ultimately decide the fate of his appeal.  As such, I find he was without counsel at a critical stage in his appeal.

Because Juan Ramirez was denied the assistance of counsel at a critical stage of his appellate proceeding, his section 2255 motion is granted to the extent that his right to appeal is reinstated.  Holding otherwise would be antithetical to the principles embodied in the Supreme Court's Sixth Amendment jurisprudence.

### D.    Luis Ramirez's Pro Se Objections[85]

---

[83]    Though I am cognizant of the fact that Luis Ramirez and Shirley Calcano both lost their *Crawford* appeals, I also note that Juan Ramirez "is entitled to a single-minded advocacy for which the mere possibility of a coincidence of interest with a represented codefendant is an inadequate proxy."  *Penson*, 488 U.S. at 86-87.

[84]    *United States v. Ash*, 413 U.S. 300, 309 (1973).

[85]    In an 3/3/10 Order, I directed the Clerk of the Court to reject any *pro se* motions by Luis Ramirez, and instructed Luis Ramirez to "either stop fililng *pro se* motions or decline the appointment of counsel."  Nonetheless, Luis filed *pro se* objections to Judge Ellis's R & R.  In light of the 3/3/10 Order, I need not consider these objections, but in the interest of a thorough resolution of this matter, I will do

Luis Ramirez has unsuccessfully attempted to obtain records detailing "the grand jury's life-line, including the beginning date and the end date of the grand jury's session; and [] the dates of each superseding indictment."[86]  His interest in those records was sparked when he noticed what appeared to be a number of superseding indictments absent from the court docket.[87]  Luis's efforts to this end have been largely fruitless.  His first request, to the Grand Jury Section of the Southern District, was forwarded to the prosecutor.[88]  In response, the Executive Office for the United States Attorneys ("EOUSA") wrote Luis a letter informing him that the office had no responsive records for his request.[89]  Unsatisfied, Luis appealed to the Office of Information Policy, which affirmed the EOUSA's action.[90]

Luis considers the responses stonewalling and evidence of forged

---

so.

[86]     Proposed Pro Se Submission of Luis Ramirez ("L.R. Motion"), Ex. B to Joint Objections, at 2.

[87]     *See id*. at 1-2.

[88]     *See id.* at 2.

[89]     *See id.*

[90]     *See id.*

indictments against him.[91]  Judge Ellis disagreed, finding no evidence indicating forgery of any indictment.

Neither Judge Ellis nor the Government dispute that "a court cannot permit a defendant to be tried on charges that are not made in [an] indictment against him."[92]  The question is whether Luis Ramirez has provided this Court with anything beyond mere speculation that the charges against him stemmed from a bogus indictment.  After reviewing the record, I find that he has not.  At best Luis has shown some short comings in the Government's record keeping, which is quite different than providing evidence that affirmatively points to an invalid indictment.  Good records would not necessarily be sufficient to establish a valid indictment if Luis had other evidence of fraud.  Likewise, missing records are not inherently an indication of fraud.

Luis objected to a lack of legal citations in Judge Ellis's recommendation on this issue, but the dispute at bottom is a factual one, not a legal one:  whether Luis demonstrated anything beyond conjecture that should concern the Court about the possibility of constitutional violations in his trial and

---

[91]     Luis Ramirez also sees evidence of prosecutorial misconduct in what he views as suspicious numbering of the indictments.  *See id.* at 3.  I am satisfied with the explanation that the EOSUA provided to Luis, that the indictment was "amended several times to add defendants, drop defendants who plead guilty, amend charges, etc."  *See* L.R. Motion at 3.

[92]     *Stirone v. United States*, 361 U.S. 212, 217 (1960).

conviction resulting from an invalid indictment.  Because I find his original motion and subsequent objections to be mere speculation, I agree with Judge Ellis that his prosecutorial misconduct claim based on multiple indictments is meritless, and adopt the recommendation that it be denied.

## VI.   CONCLUSION

For the foregoing reasons, Juan Ramirez's motion to have his appeal reinstated is granted and all of Petitioners' other motions are denied [05 Civ. 4179, Doc. 1; 07 Civ. 459, Doc. 1]. Because Petitioners have failed to make a substantial showing that they were denied a constitutional right in any of their denied motions,[93] I decline to issue a certificate of appealability. The Clerk of the Court is directed to close motions and these cases.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            July 31, 2012

---

[93]   *See* 28 U.S.C. § 2253(c)(2); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000) (holding that a substantial showing exists where (i) the issues involved in the case are debatable among jurists of reason, (ii) a court could resolve the issues in a different manner, or (iii) the questions are adequate to deserve encouragement to proceed further).

**- Appearances -**

**For Juan Ramirez:**

Jesse M. Siegel, Esq.
Law Office of Jesse M. Siegel
233 Broadway, Suite 2701
New York, New York 10279
(212) 207-9009

**For Luis Ramirez:**

Nancy Lee Ennis, Esq.
Quijano & Ennis, P.C.
381 Park Avenue South, Suite 701
New York, New York 10016
(212) 686-0666

**For Respondent:**

Michael D. Lockard
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007
(212) 637-2193